UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DARON L. H.,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:20-cv-01834-AR

OPINION AND ORDER

**ARMISTEAD, Magistrate Judge**

    In this judicial review of the Commissioner's final decision denying Social Security benefits, Daron (last name omitted for privacy) alleges that the Administrative Law Judge committed harmful error at step three because he meets or equals Listing 5.08, failed to provide clear and convincing reasons to discount his subjective symptom testimony, and failed to provide specific and legitimate reasons for partially rejecting his treating cardiologist Dr. LeGras's

Page 1 – OPINION AND ORDER

opinion that he would miss two days of work per month and required extra breaks. As the court explains below, the ALJ's decision is reversed and remanded for an award of benefits.[1]

## ALJ'S DECISION

In denying Daron's application for Title XVI supplemental security income (SSI) disability benefits, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ found Daron had not engaged in substantial gainful activity since June 9, 2016, his application date.[3] Tr. 16. At step two, the ALJ found that Daron has several severe impairments: congenital heart disease with pacemaker, borderline intellectual functioning, depressive disorder, and attention deficit disorder. At step three, ALJ determined that Daron did not meet or equal any of the listed impairments, specifically discussing Listings 12.02, 12.04, 12.06, and 12.11. Tr. 17. The ALJ did not, however, discuss Listing 5.08. After reviewing all the evidence in the record, the ALJ then determined that Daron has the residual functional capacity (RFC) to perform sedentary work except that he can occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; he can occasionally balance, stoop, crouch, crawl, and kneel; he can do simple, routine repetitive tasks with a reasoning level of 1-2; and he should avoid concentrated exposure to hazards. Tr. 18. The ALJ found Daron has no past relevant work at step four. Tr. 23.

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

[3] Daron was born in 1996 and was 22 years old at the June 2019 hearing. Daron was previously awarded childhood social security benefits. Tr. 36, 77, 307, 314, 362.

Page 2 – OPINION AND ORDER

In light of Daron's age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that he can perform, including such representative occupations as vinyl assembler, sales clerk, and packager/sealer. Tr. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.  *Step Three and Listing 5.08*

At step three, the ALJ must assess whether the claimant has an impairment or combination of impairments that meets or medically equals an impairment listed in the Appendix to the federal regulations (the Listings), 20 C.F.R. 404, subpart P, Appendix 1, and must satisfy the duration requirement, 20 C.F.R. § 416.920(a)(4)(iii). The Listings describe impairments that are so severe that they are presumptively disabling. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). A claimant may not meet a listing based solely on a diagnosis. 20 C.F.R. § 416.920(d). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter

Page 3  – OPINION AND ORDER

how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "Where an ALJ determines at [s]tep [t]hree that a claimant's impairment does not meet a listing, the ALJ must provide adequate support for that decision." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)).

Listing 5.08 requires a finding of disability if the claimant establishes "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with a body mass index (BMI)[4] of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." Appendix 1 § 5.08; *see also* § 5.00 (identifying disorders of the digestive system). To satisfy the durational requirement, Daron's condition must have "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *See Terron M. v. Saul*, Case No. 2:18-cv-09737-KES, 2019 WL 3029106, at *3 (C.D. Cal. July 11, 2019) (stating the underlying severe digestive impairment must have lasted for at least a year to satisfy durational requirement, with weight loss on two evaluations at least 60 days apart within consecutive six-month period).

Daron argues the ALJ erred at step three because the ALJ's decision contains no discussion of Listing 5.08, despite his attorney advancing such an argument at the hearing. Tr. 37, 306-07. Daron highlights that he is about six feet tall and weighs around 130 pounds, putting his BMI at or below 17.50. *See* Tr. 364 (measuring 5'11.3" tall and weighing 135 pounds); Tr.

---

[4]    BMI is a height-weight ratio that is derived when a person's weight, in kilograms, is divided by the square of their height, in meters. Patients with BMI numbers falling below 18.5 are generally considered underweight. Centers for Disease Control and Prevention–About Adult BMI: https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited September 14, 2022).

375 (6' tall & 135.3 pounds); Tr. 381 (6'0.5" tall & 130 pounds, BMI 17.45); Tr. 404 (6' tall & 134 pounds); Tr. 426 (BMI 17.83); Tr. 502 (6'0.28" tall & 132, BMI 17.9); Tr. 1068 (6' tall & 128.6 pounds); Tr. 1080 (132 pounds); Tr. 1086 (128.6 pounds); Tr. 1100 (6'1" tall & 131.6 pounds, BMI 17.43); Tr. 1115 (131 pounds); Tr. 1171 (128.2 pounds). Daron also contends that he has been diagnosed with gastritis, gastroesophageal reflux disease (GERD), and malnutrition. Daron asserts that the ALJ's step-three error was harmful because his providers have attributed his weight loss to his digestive issues, and that the ALJ should have found that he meets or equals Listing 5.08 and is disabled at step three. Pl.'s Reply at 1.

In its response, the Commissioner concedes that the ALJ erred in failing to discuss Listing 5.08 but argues that Daron cannot establish that he satisfies all the listing criteria. Although acknowledging that Daron's BMI was at or below 17.50 over a six-month period and that he has gastritis and GERD, the Commissioner argues that Daron's weight loss is not due to a digestive disorder and its unsuccessful treatment and that the ALJ's failure to discuss Listing 5.08 therefore was harmless. The Commissioner is correct.

After careful review of the record, the court finds that Daron has not identified objective medical evidence showing that he satisfies all of the criteria for Listing 5.08. Although Daron was diagnosed with gastritis and GERD, the record lacks evidence that those diagnoses were being treated with medications, and that despite his treatment, he lost weight. The record shows that Daron's primary care physician Dr. Buerk diagnosed gastritis after Daron complained of stomach pain in November 2016. Tr. 382. He was advised to try Tums. Tr. 385. As detailed above, Daron's weight remained consistently low. In October 2018, Daron was placed in nutritional counseling. Tr. 1111. At that time, the nutritionist said Daron has poor and erratic

eating habits, snacks on empty calories, and that "meal skipping and insufficient overall calories" were contributing to him being persistently underweight. Tr. 1111. In October 2018, Dr. Buerk prescribed omeprazole for Daron's GERD, but in November 2018, Daron admitted that he was not taking the medication, and he then was prescribed cyproheptadine to decrease stomach pain and increase his appetite. Tr. 1113-15. Although the record shows occasional complaints of stomach pain, Daron consistently denied constipation, diarrhea, vomiting, and gastroesophageal issues and dyspepsia. Tr. 363 (2/12/2016); Tr. 374 (3/21/2017); Tr. 1107 (11/30/18); Tr. 1060 (9/7/2017); Tr. 1056 (3/5/2018). Finally, the ALJ did not identify any digestive disorder as a severe impairment in the step two findings. Tr. 16. The court's review of the record shows no evidence supporting a finding that Daron's weight loss is because of a digestive disorder that was actively being treated that satisfies all the criteria of Listing 5.08.

Accordingly, the ALJ's error in failing to discuss Listing 5.08 was harmless because it was inconsequential to the ultimate nondisability determination at step three. *Ford*, 950 F.3d at 1157 (holding ALJ did not err at step three because there was no evidence that claimant could satisfy all listing criteria).

**B.    *Subjective Symptom Testimony***

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence

that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013).

There is no evidence of malingering, and the ALJ determined that Daron provided objective medical evidence of underlying impairments that might reasonably produce the symptoms alleged. Tr. 19. The ALJ therefore was required to provide specific, clear and convincing reasons for discounting Daron's symptom testimony. *Ghanim*, 763 F.3d at 1163. The ALJ's reasoning falls short of this standard.

At the hearing and in his function reports, Daron alleges that he is severely limited by his congenital heart defect and pacemaker. Daron testified that he suffers from fatigue and dizziness and cannot sit, stand, or walk for any length of time, and spends most days in bed. Tr. 41, 51. Daron has borderline intellectual functioning with a full-scale IQ of 77. Tr. 19, 1182. Daron testified that bending or looking down causes him dizziness, which makes it difficult to get dressed and tie his shoes. Tr. 52, 272. Daron also has trouble sleeping which contributes to his fatigue. Tr. 44-46, 271. In March 2018, Daron had surgery to replace the leads on his pacemaker. Tr. 42. Daron also described having trouble eating because he feels full quickly and has no appetite. Tr. 55.

Daron testified that he lives at home with his mother and younger sister, and that his grandmother takes him to appointments. Tr. 38-39. Daron dropped out of school in tenth grade, does not drive, and does not have a GED. Tr. 40. Daron expressed that he feels depressed, isolated, angry, and irritable, and he complains of memory problems and difficulty concentrating. Tr. 53. Daron stated that he was seeing a therapist but, because of transportation issues, has been unable to continue with appointments. Tr. 43. Daron testified that he cleans his room, loads and unloads the dishwasher, and goes grocery shopping with is mother. Tr. 47.

Daron argues that the ALJ failed to identify specific, clear, and convincing reasons to discount his testimony. Daron contends that the ALJ cherry-picked the evidence and that the overall picture of his health reveals severe limitations. The court agrees.

In the decision, the ALJ discounted Daron's subjective symptom testimony because it is inconsistent with his medical record. Inconsistencies between a claimant's allegations and the objective medical evidence can provide a clear and convincing reason for discounting a

Page 8 – OPINION AND ORDER

claimant's testimony. *See Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021) (stating that ALJ may reject claimant's subjective symptom testimony that is inconsistent with medical evidence); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (same). Lack of objective medical evidence to support the severity of claimant's symptoms may not provide the sole basis for discounting a claimant's subjective symptom testimony. *Trevizo*, 871 F.3d at 679.

The ALJ discounted Daron's alleged physical limitations based primarily on two treatment notes from Daron's treating cardiologist Dr. LeGras. The ALJ stated that a February 2016 treatment note shows that Daron was "exercising regularly" by weightlifting and going on walks. Tr. 19. The ALJ also cited an April 24, 2018 treatment note, which was after Daron's surgical pacemaker repair, noting that Dr. LeGras found "dramatic improvement" in his heart's functioning. Tr. 399. The ALJ also generically stated that Daron was "doing well" in follow-up appointments after his surgery. Tr. 20. The ALJ's findings, however, are not supported by substantial evidence.

The February 2016 treatment note does not reflect that Daron was "exercising regularly." Instead, it states that Daron reported doing a "bit of weightlifting some walking and normal exercise tolerance." Tr. 363. Yet there are no other records identified by the ALJ or in the court's review of the record showing that Daron regularly exercised or engaged in weightlifting. And the "dramatic improvement" in 2018 cited by the ALJ and discussed in Dr. LeGras's treatment notes refers to the functioning of Daron's pacemaker, not his activity level or ability to exercise. Contrary to the ALJ's findings, the record consistently shows that Daron is not physically active, that he reports needing to rest after walking for less than fifteen minutes, and that he is restricted from performing strenuous exercise and may not lift more than ten pounds due to his pacemaker.

Tr. 403, 407, 1067, 1069, 1118, 1139. Moreover, the follow-up appointments describing Daron as "doing well" are more fairly attributed to his recovery from the "very difficult implant" of his pacemaker lead, with pneumothorax (deflated lung), which required him to wear a shoulder immobilizer following surgery. Tr. 399-400. The ALJ's reasoning here is not supported by substantial evidence and consequently fails to provide a clear and convincing reason to reject Daron's subjective symptom testimony.

      The ALJ also rejected Daron's testimony about his mental health limitations because the treatment notes are intermittent, and there are "few objective findings indicative of significant functional restrictions." Tr. 20. The ALJ discussed that Daron has been diagnosed with depressive disorder, single episode mild, and that he has delayed following up with treatment. Tr. 20, 1147-48. The ALJ also noted that Daron reported his mental health symptoms improved with medication and followed-up with appointments. Tr. 20, 1146-66.

      The record shows that Daron was first diagnosed on October 9, 2018, with mild depression, but, on October 16, 2018, following a more thorough evaluation by Dr. Peterson, his therapist, the diagnosis was changed to depressive disorder, single episode severe without psychotic features. Tr. 1160; *see also* Tr. 1147-1159. The ALJ correctly stated that Daron reported improvement in his depressive symptoms with fewer anger outbursts and decreased irritability after being prescribed sertraline in October 2018. Tr. 1067, 1117. But the record also shows that Daron's depressive symptoms were not completely resolved and that he was still having trouble leaving his room most days. Tr. 1151. Daron's slight improvement does not contradict Daron's testimony that he continues to struggle with sleep, irritability, low motivation, and fatigue. Daron also testified that he has transportation issues that contribute to his inability to

regularly attend therapy appointments. Tr. 43. Thus, the court concludes the ALJ's findings are not fully supported by substantial evidence and consequently is not a clear and convincing reason for discounting Daron's testimony.

The ALJ also discounted Daron's testimony about his mental health limitations because the psychological consultative examinations revealed "little evidence to support the severity of his alleged symptoms." Tr. 20. The ALJ findings on this point, however, are not sufficiently specific. *Brown-Hunter*, 806 F.3d at 493 (stating that the ALJ must identify what testimony is not credible and identify what evidence undermines a claimant's complaints) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ did not identify what specific evidence from Drs. Dooley and Hiller's consultative examinations undermined Daron's claimed limitations. Instead, the ALJ simply summarized their examination findings. Tr. 20-21. "Indeed, our decisions make clear that we may not take a general finding – an unspecified conflict between Claimant's testimony . . . and her reports to doctors – and comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 494 (simplified) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)).

The Commissioner attempts to fill in the gaps in the ALJ's rationale. According to the Commissioner, the ALJ discounted Daron's testimony because he was not motivated to work and had trouble focusing. Def.'s Br. at 5. The Commissioner argues that Dr. Dooley noted Daron spent a lot of time on social media, working on music, smoking marijuana, and "lives a sedentary adolescent and entitled lifestyle." Def.'s Br. at 5, Tr. 395. The Commissioner also contends that, contrary to Daron's alleged difficulty concentrating, he could recall three out of three objects immediately and two of three after five minutes and could spell "world" forward and backward

on testing. Def.'s Br. at 5, Tr. 394. The ALJ did not, however, rely on secondary gain, Daron's alleged lack of motivation, playing music, alleged marijuana use, or his testing results as a basis to discount Daron's testimony. The court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Trevizo*, 871 F.3d at 675 (stating the court "review[s] only the reasons provided by the ALJ" and "may not affirm the ALJ on a ground upon which he did not rely") (internal quotation and citation omitted). The court may not supply reasons not offered by the ALJ in the first instance. *Brown-Hunter*, 806 F.3d at 494. Accordingly, these reasons do not provide a basis for discounting Daron's subjective symptom testimony.

In summary, the court concludes that substantial evidence does not fully support the ALJ's findings and that the ALJ has failed to identify testimony that she found not credible and link that testimony to particular parts of the record. Therefore, the ALJ has failed to provide specific, clear and convincing reasons to discount Daron's subjective symptom testimony. *Brown-Hunter*, 806 F.3d at 494. The ALJ has erred.

**C.   Dr. LeGras's Opinion[5]**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. Typically, a claimant's treating physician is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion is

---

[5]   The hierarchical treatment of medical opinions has been supplanted by new rules—20 C.F.R. §§ 404.1520c(a), 416.920c(a)—as of March 27, 2017. This case proceeds under the old rules.

not controlling, the ALJ should consider other factors, such as the length of the treatment relationship, supportability, consistency with the record, and specialization. *Id.* § 404.1527(c)(2)-(6); *Trevizo*, 871 F.3d at 675. In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a non-examining physician. *Ghanim*, 763 F.3d at 1160. If a treating or examining physician's opinion is contradicted by another physician's opinion, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012.

      An ALJ satisfies the substantial evidence requirement by setting out a thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation of the evidence and making findings. *Id.* Simply crediting one physician's opinion over another is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

      Dr. LeGras has been Daron's treating cardiologist for over 20 years. Tr. 1066. Dr. LeGras explained that Daron was born with congenital heart disease requiring a pacemaker, and that he suffers from orthostatic hypotension and syncope, valve regurgitation, reduced ventricular function, and malnutrition based on poverty and noted Daron may eventually need a heart transplant. Tr. 1063. Dr. LeGras completed a functional assessment of Daron's physical abilities

and limitations. Tr. 1063-66. Dr. LeGras opined that Daron equals Listing 4.06 due to his orthostatic hypotension and that he has difficulty standing and working; he can lift/carry 10 pounds occasionally; he can stand/walk for 5-10 minutes at a time; he can stand or walk for less than two hours in a day; he can sit for six to eight hours in an eight-hour day; he can never perform postural activities, can frequently finger, feel, and talk, and occasionally handle; he requires unscheduled breaks due to his health and nutritional status; and he would miss 16 hours per month due to his impairments. Tr. 1063-66.

The ALJ gave "some weight" to Dr. LeGras's opinion that Daron could lift 10 pounds occasionally and sit for six to eight hours, finding those limitations are supported by his "wide variety of daily activities" and "the medical record as a whole." Tr. 22. The ALJ rejected the remaining portions of Dr. LeGras's opinion generically because "they are inconsistent with the record as a whole." Tr. 22. The ALJ pointed to Dr. LeGras's opinion that Daron could never reach and occasionally handle and stated that it is "inconsistent with Daron's ability to play video games, use a computer and social media, and cook meals." Tr. 22. The ALJ also noted that Dr. LeGras's opinion that Daron equaled Listing 4.06 is not supported by medical record. Tr. 22.

Daron argues the ALJ failed to provide specific and legitimate reasons for discounting Dr. LeGras's opinion that he would need unscheduled breaks and would miss 16 hours a month due to his impairments. Tr. 1066. Daron argues that the sole rationale provided by the ALJ for discounting this portion of Dr. LeGras's opinion is that it was "inconsistent with the record as a whole" and is neither specific nor legitimate. The court agrees.

Although the ALJ identified a single inconsistency—that Dr. LeGras's opinion about reaching and handling conflicts with Daron's ability to play video games, use a computer and

Page 14 – OPINION AND ORDER

cook—the bulk of the ALJ's analysis of Dr. LeGras's opinion relies on boilerplate, conclusory language. Although the ALJ gave Dr. LeGras's opinion some weight, the ALJ failed to apply the appropriate factors in determining whether the opinion should be given dispositive weight under 20 C.F.R. § 404.1520(c)(2). The ALJ did not consider the nature of the 20-year treatment relationship, the supportability of the opinion, or Dr. LeGras's specialization when discounting it. Failure to consider these factors is reversible error. *Trevizo*, 871 F.3d at 676.

Moreover, the ALJ's only detailed reason for rejecting Dr. LeGras's opinion does not, on this record, supply a specific and legitimate reason to reject it. The ALJ detailed that Dr. LeGras's opinion that Daron could never reach and occasionally handle was inconsistent with his ability to play video games, use a computer, and cook. Tr. 22. The ALJ did not, however, identify the allegedly contradictory evidence, and the evidence concerning how often Daron performed these activities is imprecise. In 2016, Daron reported to Dr. Dooley that he spends a lot of time on the computer, plays videogames, and can cook simple meals. Tr. 394. Yet at the 2019 hearing, Daron testified that he does not play video games very often because he does not have his own games, his sister's Xbox is broken, and that he will borrow his cousin's PlayStation when permitted. Tr. 48. Similarly, Daron reported to Dr. Dooley in 2016 that he can cook easy meals, but at the 2019 hearing, he testified that he will warm food from the freezer or refrigerator in the microwave that his mother prepares. Tr. 46-47, 394. The ALJ did not discuss how often Daron performs these activities. Without specific findings about frequency, those activities do not provide substantial evidence that undermines Dr. LeGras's medical opinion that Daron can never reach and occasionally handle. Tr. 1066. See *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir.

2017) (holding ALJ erred in discounting examining physician's opinion based on claimant's activities of daily living).

More importantly, the ALJ's remaining discussion about Dr. LeGras's opinion is conclusory and lacks any reference to specific evidence that contradicts his opinion that Daron's condition equals Listing 4.06, that he would need to take unscheduled breaks, and would miss 16 hours a month due to his impairments. The ALJ also provided no reasons whatsoever for rejecting Dr. LeGras's opinion Daron could never stoop, bend, crouch, or crawl, presumably based on Daron's orthostatic hypotension, which is well-documented throughout Dr. LeGras's treatment notes. Dr. LeGras discussed in August 2015 and February 2016 that Daron was having great difficulty with lightheadedness and standing due to his orthostatic hypotension, low weight, and medication side effects from lisinopril that he must take to "slow the progression of his tricuspid valve regurgitation." Tr. 363, 366. Dr. LeGras tried reducing the dose of lisinopril, but Daron reported continued difficulty exercising, standing, and bending because of dizziness and vision loss. Tr. 374, 376. In November 2018, Dr. LeGras noted that Daron was continuing to have orthostatic hypotension episodes with dizziness and visual disturbances and presyncope (near fainting) despite eliminating the lisinopril, and that Daron expressed fatigue and difficulty exercising. Tr. 1067. Thus, the court finds that the ALJ has not provided a specific and legitimate reason backed by substantial evidence for partially rejecting Dr. LeGras's opinion.

The Commissioner contends that the ALJ appropriately rejected Dr. LeGras's opinion that Daron equals Listing 4.06 because it was inadequately explained and is unsupported. Tr. 22. Again, the ALJ cited no medical records and offered no explanation as to how any evidence contradicted Dr. LeGras's opinion. Tr. 22. Simply criticizing Dr. LeGras's opinion generically

Page 16 – OPINION AND ORDER

without citing to conflicting evidence or providing some reasoned basis for discounting it, is insufficient. *See Garrison,* 759 F.3d at 1012-13 (stating ALJ errs by stating conclusions or offering boilerplate language that failed to offer substantive basis); *see also Trevizo,* 871 F.3d at 675 (stating the court is constrained to review the reasons asserted by the ALJ).

In short, the ALJ failed to follow the appropriate methodology in weighing a treating physician's opinion and failed to identify specific and legitimate reasons for discounting his opinion that Daron would require extra rest breaks and be absent 16 hours per month. Accordingly, the ALJ erred in discounting Dr. LeGras's opinion.

**D.     *Remedy***

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

The court finds that Daron satisfies the credit-as-true standard and that a remand for benefits is appropriate. As discussed above, the ALJ committed harmful legal error by failing to properly evaluate Daron's testimony and the opinion Dr. LeGras. Dr. LeGras opined in relevant part that Daron required additional rest breaks and would miss more than two days of work per month, and the vocational expert testified such absences would preclude competitive employment. Tr. 57; *Shannon B. v. Comm'r Soc. Sec. Admin.*, Case No. 6:19-cv-00843-AC, 2020 WL 7181585, at *13 (D. Or. Dec. 7, 2020) (remanding for benefits where VE testified that being off-task more than ten percent or absent more than once per month precludes competitive employment); see *Richard R. v. Comm'r Soc. Sec. Admin.*, Case No. 3:19-cv-00918-MK, 2020 WL 4193114, at *11 (D. Or. July 21, 2020) (stating that VE testimony that claimant would be absent two to three times a month from thirty minutes to two hours cannot maintain competitive employment). And, as discussed above, the ALJ failed to provide clear and convincing reasons for discounting Daron's testimony that he suffers from extreme fatigue, lightheadedness, and dizziness that prevent him from maintaining employment.

The Commissioner argues that ambiguities in the record require remand. The Commissioner argues that Dr. Dooley's opinion, which is unchallenged by Daron, observed that Daron is not motivated to work and engaged in daily activities that show he is more capable, such as playing music, working on the computer, and performing limited household chores. Def.'s Br. at 8; Tr. 394-96. The court disagrees that Dr. Dooley's psychodiagnostic evaluation requires that the case be remanded for further proceedings here. While Dr. Dooley diagnosed dysthymia and noted Daron was not looking for work, he also observed that Daron has below average IQ, has an unrealistic view of his own abilities, and he would require a payee if awarded

benefits. Tr. 393-94, 397. Dr. Dooley's examination findings were confirmed by Dr. Hiller, who opined that Daron has borderline intellectual functioning and that he would "struggle to function well in daily adult life without additional supports." Tr. 1180. The ALJ gave the opinions of Drs. Dooley and Hiller little weight. Tr. 21.

The court is convinced that the opinions of Drs. Dooley and Hiller do not require remand. Their opinions relate to Daron's mental functioning. While Daron's mental health limitations contribute to his low-level of functioning, his primary barrier to employment is his physical limitations, about which Dr. LeGras opined. Further, Daron's ability to engage in some daily activities, including performing limited household chores, playing music, working on the computer, and preparing simple meals, does not inherently contradict his testimony that he is plagued by fatigue and dizziness due to his congenital heart condition and longstanding orthostatic hypotension. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (Citation omitted).

When Dr. LeGras's opinion is credited as true, the ALJ would be required to find Daron disabled and further proceedings would serve no useful purpose. *Garrison*, 759 F.3d at 1023; *Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding for benefits when ALJ erred in discounting a treating physician's opinion, and when credited as true claimant was disabled). Having carefully

considered the entire record, the court has no serious doubt that Daron is disabled. Accordingly, the court exercises its discretion to remand for an immediate calculation and award of benefits.

## CONCLUSION

For these reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate award of benefits.

IT IS SO ORDERED.

DATED September 19, 2022.

_____
JEFFREY ARMISTEAD
United States Magistrate Judge